May it please the Court, Mr. Wilson, my name is Edward Jordan, Attorney for the Employer and Appellant of Unique Delivery Systems. In this case, there are three main issues in which we take... And there is jurisdiction, right? There is jurisdiction in this case. Not an issue to my knowledge, unless you're going to bring it up. I didn't want to frighten you, but... Three points which the appellant takes... feels that the commission erred, and then we are also cross-appellee on the issue of penalties for which we would argue that the commission was correct in finding there was no... penalties to be awarded. The first issue that we have is the arbitrator in the second 19B hearing. His reliance on the first 19B hearing in saying that he was bound by the decision of the arbitrator as to causal connection and therefore could not make a determination as to causal connection in the second 19B hearing. Brief factual background, this was a one-car traffic accident in April 2008 in which there was some cervical spine and lumbar spine complaints following the incident. There was some treatment for both conditions. However, approximately two months following the accident, the claimant went to Dr. Snyder on June 26, 2008 and said his neck pain had resolved. There was some mild low back pain. He was eventually returned to work regular duty in September of 2008. This was prior to the first hearing.  Let's just cut to the chase. We know the facts of the case. Why isn't this just a contest between Salih's opinion and DeFillips' opinion? Well, the arbitrator in the second... the commission and the commission affirmed in the second 19B hearing said that despite these findings, I'm bound as to causal connection. Well, what he did say was Salih's opinion was that the claimant's neck condition resolved by June 26, 2008 and our previous ruling held that there was causal connection at least through August 10, 2009. And that's where the arbitrator couldn't go anywhere else. And so Salih's opinion was that the neck condition resolved. DeFillips' opinion was that it hadn't. And the commission decided to place more weight on DeFillips' opinion. So what's wrong with DeFillips' opinion? Well, DeFillips' opinion is not correct and it's wrong in that he was not provided with a proper medical history on the claim. There is... during... he did not know about the prior release from Dr. Snyder. He did not know about the June 26th... Well, he admitted he didn't have the release from Snyder from June the 28th, but he also included the fact that although the claimant was released to work in September of 2008, he suffered a relapse and exacerbation in symptoms upon returning to work and sought emergency treatment. That he knew. That he knew. Correct. And if you look at the records following that relapse, those are related to the most mainly for the lumbar spine. When he goes back into the hospital following his return to work, it's more so for the lumbar. The cervical condition comes about... the main cervical condition does not come about until 2009. Until July 24th of 2009. And I think his reliance on the prior decision... if you look at the prior decision, it only references treatment up to April of 2009. And he says, well, I'm bound by the causal connection opinion that was found by the commission and affirmed. But the records... Up to August 10th, 2009. Correct. And that decision is very vague as to what conditions they found to be related. That decision just says there's a causal connection between his current condition of ill-being and the work accident. There is no question that DePhillips testified that he believed that the neck condition was caused by the workplace accident. He did testify to that. Dr. DePhillips did, yes. DePhillips. And there's no question that Schley was not of that opinion. Well, the current condition. I mean, so Dr. Schley indicated that there was a minor cervical strain that likely would have, you know, related. But it had resolved, and therefore it wasn't his current condition of ill-being. I mean, counsel, you know, in his brief, argues that it's the law of the case. And I think that the arbitrator... it appears that the arbitrator relied on that. The arbitrator in the second finding. And I don't... and it's not correct, based upon the Weyer case, that you're bound as to causal connection in a subsequent 19B hearing. You're not bound by causal connection for periods past the original 19B. You certainly are for the period up to the decision in the original 19B. You don't get to retry the original case, do you? No. No, and I think that's the claimant's reliance on the East Perry case, if I'm pronouncing that correctly. I think that was more so the case. In that case, he relies and says causation is the law of the case. You cannot relitigate. And if you read the facts of that case, in a third hearing, the claimant's case, a claimant-sided case, in a third hearing, the arbitrator comes back and says, none of this is related. And therefore, then that case, that was stricken and said that it was the law of the case and you could not challenge it. In the Weyer case, there was different injuries and there was progression of injuries. Such as this case, there's progression of injuries. But the issue that we have with the commission decision for the second case is that it doesn't appear from the record that the arbitrator or the commission specifically said, I'm bound by the causal connection up to August 10, 2009. He just says he's bound by the causal connection finding of the commission in the prior case. Did you present new evidence subsequent to the first arbitration hearing for why his condition after the first arbitration hearing was not causally connected? Well, Dr. Salehi's report does reference. He would theoretically go back to the original. Dr. Salehi's... It's the same. Basically, you put on the same evidence as at the first one. Same reasoning by the doctors. Well, doctors... There wasn't prior IME correct at the first arbitration hearing. And Dr. Salehi, his opinion was what it was. He related it back to the first condition. Now, your evidence in that regard had already been rejected at the first arbitration hearing. As to... I don't necessarily know if specifically that was noted. In the first arbitration... I have trouble understanding what you say is wrong with what the arbitrator said. What the arbitrator said, and the commission adopted, noted that it was, quote, bound by the previous arbitration finding that the claimant's condition of ill-being as of 8-10-09 was causally related to the accident in question. What's wrong with that statement? They were bound by it. It is condition of ill-being as of August 10-09 was causally related to the accident. They were bound by that. Well, if you also look at the decision of the arbitrator on August 10-09, the records that relate to a cervical spine, which was mainly the condition that was brought forward in the second arbitration hearing, was the last records more so specific to the cervical spine were the records of Dr. Snyder where it said he was released and he had no more neck pain. Well, that was great to argue in the first one, but you lost it. The arbitrator knew he couldn't determine that the claimant's cervical spine condition had resolved in June of 2008. It had already been found that it was causally connected as far as August 10-09. He was bound by that. I'm at a loss to understand what's wrong with that reason. Well, I think that the first arbitration decision, I don't think, necessarily fleshes out that there was a specific cause of connection finding as to what... The arbitrator said since that time the records document consists neck and back pain with radiation into the extremities, indicating that the commission's present decision was based on the claimant's medical records, including the records after August 10-09. You've got to read the decision in its entirety. You can't pick a sentence. In getting to that, in terms of what's wrong with the commission decision in the subsequent 19B hearing, so the decision of January 17, 2012, is that I think that Dr. Salehi's opinion is not exactly the same. It wasn't the same evidence. It was a subsequent Section 12 examination which the respondent, the health appellant, was able to obtain. And he found that he suffered a cervical strain and that the current condition of ill-being, as it was in January of 2011, was not causally related. And it wasn't at the time of the first hearing, based on that same opinion. Dr. Salehi was not the examiner at that time. There was a different examiner, but that's what the opinion was of the doctor at that time. That was his opinion. He made an opinion that the current condition and he didn't require the medical treatment or the lost disability following his examination. His opinion was contrary to the decision of the first arbitration hearing. I would agree with that. Salehi's opinion was contrary to the decision of the first arbitration. I would agree that Salehi... Well, Salehi's opinion certainly was contrary to the decision that full causal connection existed as of August 10, 2009. Absolutely. He said the condition to resolve by June 26, 2008. He can't say that. Arbitrators couldn't find that. They couldn't find that. They were bound by that original decision. And I would also state that the original decision also references only the records related to a release from care and treatment for the lumbar spine mainly at the last time that the claimant had treated. Now, I do agree that he did testify that there was some continued cervical complaints and neck complaints at the first arbitration hearing. So there was some issue with the cervical spine. But the records as detailed in the commission's decision document that he saw Dr. Snyder said there was no more neck pain. And then the records document the treatment to the lumbar spine thereafter. It wasn't until July of 2009 that the main cervical conditions popped up. And so even assuming that the commission's decision there was no law of the case argument that counsel had brought up in his brief assuming that the arbitrator could make a determination as of the second hearing our respondent would ask or a talent does ask that it be reversed in that Dr. DeFillips' opinions Dr. Salady's opinions are more credible and should have been followed rather than the records and opinions of Dr. DeFillips based upon the arguments in our brief. Secondly, there's an issue with regard to temporary total disability benefits. The respondent and appellant argues that the award of temporary total disability benefits was against the manifest way of the evidence. The main issue is also causation. The causation for Dr. Salady's opinions that we've discussed would follow that the TTE benefits would not be awarded but there was also arguments and points that we had made in our brief related to the fact that there was a labor market survey provided to the claimant in 2010. There was no evidence of any search for employment or looking for employment until January of 2011 at which point there was no documented up to that point there was no documented job search. You make a statement that this man made no credible attempt to secure employment Massett testified she found 12 positions in July of 2010 for the claimant based on his skills and work condition. He testified that he applied for all those positions except for two because he couldn't locate the listed employer and one position exceeded his work restrictions. He testified that beginning in 2009 he applied for other jobs to be found through his own efforts working with several temporary employment agencies and he began documenting his personal evidence in January of 2011 and recorded applying for 17 positions since then. And it's undisputed that you didn't have any light medium demand work level work available for him and didn't offer him any vocational rehabilitation beyond what Massett provided. As to the first point the testimony showed that there was after the vocational counselor provided the labor market survey that was in July of 2010 there was nothing done until January of 2011. Finally we would also argue that the commission's denial of penalties be affirmed. Assuming that the rest of the decision is affirmed a respondent would ask that the denial of penalties be affirmed. Counselor respond. May it please the court my name is Mark Wilson and I represent James Gaddison in this case. It's our position that the decision should be affirmed in its entirety with the exception of penalties and attorney fees should be assessed and that we filed a cross appeal regarding that issue. As to appellant's argument about causal connection between the cervical condition and the April 10, 2008 accident it's our position that the law of the case doctrine applies to this based upon Ira Zeri something that I believe is very important. Well it certainly applies up to August the 10th. That's right your honor and with that in mind I wanted to tell you the testimony at that August 10, 2009 hearing. Mr. Gaddison testified that he had severe pain in his upper extremities as well as daily headaches. That was something he testified at the time of that hearing and what I think also is very important which would distinguish our case here from that wire case is that Mr. Gaddison my client underwent a cervical MRI on August 4, 2009 which was before the August 10, 2009 hearing and that indicated the findings that ultimately resulted in them recommending the cervical fusion that the arbitrator ordered in the second hearing. So I believe that's a very important issue. Now whereas in that wire case it was a thing where the tear that developed was about a year and a half after the initial arbitration hearing and the subsequent dispute involved the dispute after the initial hearing whereas in this particular case Dr. Salehi was making an argument from the issues that had already been litigated in the first hearing. One of the things that I wanted to bring to your attention is prior to the depositions of both of their IME physicians one Dr. Salehi and the other one Dr. Horowitz I did go on the record and indicate that I was objecting to the deposition going forward based upon the issue of the cervical condition having already been litigated in the first hearing so I just wanted to bring that to the court's attention because I did not put that in my brief. With regard to the issue of causal connection I believe that that is clearly that was decided in the first case and by the law of the case doctrine and the dispute that counsel had or that the respondent was putting forward was about issues from prior to that first hearing and as such there is no basis for them to make that argument based upon the law of the case doctrine. As to the cervical condition that should be affirmed as it was not against the manifest weight of the evidence as to the issue of the temporary total disability benefits likewise that should be affirmed in addition to what was discussed when counsel was arguing on their argument it should be noted with regard to any job search Mr. Gadsden indicated that he did the job search based upon financial desperation but it should be noted that Dr. DePhillips did have him completely off work at a certain point as well so that is something that needs to be taken into consideration as well so that the temporary total disability finding should be affirmed as well. I want to focus now on my cross appeal with regard to the issue of penalties and just to kind of emphasize the conduct in this case by respondent's counsel I did put forth a timeline in my brief that I think is very helpful I just wanted to go through that the work accident question was April 10 of 2008 and what's important about that is it was a rollover accident in a delivery truck and Mr. Gadsden, my client, had no pre-existing back or neck condition at all the arbitration hearing, the first one was in front of Arbitrator White on August 10 of 2009 in which he caused or related the back and the neck problems and then she awarded the TTD benefits that had been disputed up to that point so he was paid up to August 10 of 2009 so April 10, 2008 to August 10, 2009 as far as the TTD benefits now since then he has received no additional TTD benefits or payment for any medical treatment since then up until the second arbitration hearing of October 13, 2011 Can I ask you a question? No, it's a late fee, it's mandatory unless the insurer can show that there's an adequate justification for the delay Don't they have the opinions of two independent medical examiners to point to as a reason for the delay because they're contesting causation, right? Well, I would say that they were not put Well, first of all, I would say Dr. Salahis does not apply or wasn't put forth in good faith because by the law of the case doctrine That doesn't mean it wasn't put forth in good faith He can be wrong, but that doesn't mean it's not in good faith. Salahis says there simply isn't any causal connection at all and he was perfectly fine June and he's wrong from June to August and they paid you to August I'm not saying that Dr. Salahis was acting in bad faith Did they pay you to August 10th? Of 2009, yes The only thing wrong with Salahis' opinion was the period of time from June until August 10th That's the only thing that you've got a law of the case argument on and they paid you to that date I understand. It's my understanding based upon the case law that just because there is an opinion out there it has to be reasonable and I would say that on that basis it was not reasonable Why isn't it reasonable medically for him to say in my medical opinion there is no causation If they had not paid you between June and August, you'd have one heck of an argument You're saying that the employer could not have reasonably relied upon that opinion because it's the same opinion that was rejected in the first arbitration That is what I'm saying With regard to Dr. Horowitz There are other Section 12 physicians He actually agreed that there was a causal relationship with the neck He disagreed as to the need for surgery but he did agree that there was a causal relationship to the neck This is a big issue too On the one hand I'm making the argument that Dr. Salehi's opinion should be rejected as not being reasonable and as to Dr. Horowitz He actually was in our favor with regard to the cervical condition It's our position that really there was nothing in controversy up until the arguably giving them the benefit of the doubt They did have the surveillance There was a particular date in January of 2011 in which there was surveillance It's my argument that there was no reasonable basis to withhold the TTD benefits and the payment of medical bills from August 11, 2009 which would be the date of the arbitration hearing up until the surveillance that was done on January 24, 2011 For that period of time I believe that's the period that penalties should be assessed Thank you all for your time Thank you Counsel, you may reply With regard to counsel's argument regarding penalties I did not fully flesh out in that there was a reasonable basis on which the appellant did not pay benefits in this case They were relying on an independent medical evaluation report which there's long-standing cases that says there's reasonable reliance on an independent medical evaluation report Does that bear on the analysis? Well, in terms of up to the point of the first arbitration hearing anything subsequent to that there's new MRIs there's new treatment Things have materially changed since the first The medical opinion that you relied on didn't it relate back to the bottom line of the doctors saying it wasn't causally connected on August 10, 2009 and it's not causally connected now Isn't it basically the same? You could rely on anything new saying there's been a change since August 10 He's recovered now Or you could say he recovered before August 10 Correct. He had basically said that there was a minor whiplash injury and then the MRI findings, the surgical opinions So it wasn't any new opinion Well, it was a new opinion also as of the date of his independent medical examination As of when he saw him up to that date He said I was right before and I'm right now Well, he wouldn't examine him Dr. Salehi did not examine him before his examination in 2011 That opinion was right I think in terms of the issue as to causation I think it was reasonable to rely on Dr. Salehi's report in this case I believe that was the basis Can I ask you a question? What reason did the arbitrator give for denying penalties? There was no He gave no reason He just said penalties are not awarded And the commission affirmed it Correct What was the date of Dr. Salehi's last Section 12 examination? I believe that was January 6, 2011 And Prior to January How many times did he actually see him? Dr. Salehi? Yeah It's my understanding he saw him once The first time he gave an opinion that was rejected by the commission Was based on a records examination only? Well, he never had given No, he had seen The first independent medical evaluation in the prior case Dr. Conowitz Who I believe counsel was referring to Was a pain management doctor In the first independent medical evaluation In the first case There was an independent medical evaluation By Dr. Delheim Dr. Salehi had not seen him Prior to the first arbitration decision So Salehi gives an opinion In January of 2011 Saying there's no causal connection And that it Was totally resolved back in June 26, 2008 And based on that You refused to pay Benefits from August 10 Which is the date you were ordered to pay benefits To when you paid those You refused to pay benefits from August 10 All the way through, what, January of 2011? January 13, 2011? Well that was Counsel indicated there was also surveillance There was surveillance that was taken of the claimant And so that surveillance was also Contained within the dispute As to, you know, TTT benefits As well as medical benefits But Salehi's Dr. Conowitz, it wasn't a simple causal connection He indicated that He applied an updated FCE would be beneficial Since there was nothing in the claimant's chart He also indicated he could not return to work As a truck driver as pain complaints were purely subjective That was dating back to September of 2010 That was a records review With a pain management specialist In terms of the So I think it was reasonable in this case Based upon the conflicted medical records Based upon Dr. Salehi's report Based upon Dr. Conowitz's report Based upon the surveillance That there was a reasonable basis For an award of no penalties In this case Am I able to respond? Yes, you may reply I will reply And I'll be very brief It's our position as to the issue of penalties That the employer Has not met their burden of proving reasonableness Which is their burden of proof That they were reasonable for that time period in question And as such, the penalties should be assessed For that time period in question Thank you, counsel Bolch For your arguments on this matter This position shall issue And the court will stand in recess Subject to call